UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JASON PRECHTEL,

        *Plaintiff*,

    v.

FEDERAL COMMUNICATIONS
COMMISSION,

        *Defendant*.

Case 1:17-cv-01835-CRC

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JESSIE K. LIU
United States Attorney

DANIEL F. VAN HORN
Chief, Civil Division

JOHNNY H. WALKER
Assistant United States Attorney
555 4th Street, N.W.
Washington, District of Columbia 20530
Telephone: 202 252 2575
Email: johnny.walker@usdoj.gov

February 16, 2018        *Counsel for Defendants*

# CONTENTS

*Table of Authorities*..................................................................................................... ii

INTRODUCTION ...........................................................................................................1

BACKGROUND .............................................................................................................1

STANDARD.....................................................................................................................3

ARGUMENT ...................................................................................................................5

I.      The FCC Conducted an Adequate Search ..........................................................5

II.     The FCC Properly Withheld Some Information Pursuant to FOIA Exemptions ...............7

        A.      The FCC Properly Withheld Information under Exemption 5 ..............................8

        B.      The FCC Properly Withheld Information under Exemption 6 ..........................10

        C.      The FCC Properly Withheld Information under Exemption 7(E) ........................12

III.    The FCC Released Reasonably Segregable Information....................................14

CONCLUSION................................................................................................................15

# AUTHORITIES

## Cases

*Alliance for the Wild Rockies v. Dep't of the Interior*,
  53 F.Supp.2d 32 (D.D.C. 1999) ............................................................ 11

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .................................................................... 3, 4

*Armstrong v. Executive Office of the President*,
  97 F.3d 575 (D.C. Cir. 1996) ............................................................ 14

*Bayala v. U.S. Dep't of Homeland Sec.*,
  264 F. Supp. 3d 165 (D.D.C. 2017) ...................................................... 12

*Blackwell v. FBI*,
  646 F.3d 37 (D.C. Cir. 2011) ............................................................ 13

*Brayton v. Office of U.S. Trade,
  Rep.*, 641 F.3d 521 (D.C. Cir. 2011) ..................................................... 4

*Campbell v. U.S. Dep't of Justice*,
  164 F.3d 20 (D.C. Cir. 1998) ............................................................ 13

*Canning v. Dep't of Justice*,
  567 F. Supp. 2d 104 (D.D.C. 2008) ...................................................... 14

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ...................................................................... 3

*Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*,
  600 F. Supp. 114 (D.D.C. 1984) ........................................................... 9

*Cleveland v. United States*,
  128 F. Supp. 3d 284 (D.D.C. 2015) ........................................................ 9

*Coastal States Gas Corp. v. Dep't of Energy*,
  617 F.2d 854 (D.C. Cir. 1980) ............................................................ 9

*Consumers' Checkbook Ctr. for the Study of Servs. v. HHS*,
  554 F.3d 1046 (D.C. Cir. 2009) .......................................................... 11

*Cornucopia Inst. v. U.S. Dep't of Agriculture*,
  --- F. Supp. 3d. ---, 2017 WL 4685541 (D.D.C. Oct. 17, 2017) .............................. 12

*Defenders of Wildlife v. U.S. Border Patrol*,
  623 F. Supp. 2d 83 (D.D.C. 2009) ......................................................... 4

*Dudman Comm. Corp. v. Dep't of the Air Force*,
   815 F.2d 1565 (D.C. Cir. 1987) ........................................................................ 9

*FBI v. Abramson*,
   456 U.S. 615 (1982) ...................................................................................... 13

*Gallant v. NLRB*,
   26 F.3d 168 (D.C. Cir. 1994) ............................................................................ 8

*Ground Saucer Watch, Inc. v. CIA*,
   692 F.2d 770 (D.C. Cir. 1981) .......................................................................... 4

*Judicial Watch v. Rossotti*,
   285 F. Supp. 2d 17 (D.D.C. 2003) ..................................................................... 5

*Judicial Watch, Inc. v. Dep't of Justice*,
   365 F.3d 1108 (D.C. Cir. 2004) ......................................................................... 8

*Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*,
   736 F. Supp. 2d 202 (D.D.C. 2010) ................................................................. 10

*Kidd v. Dep't of Justice*,
   362 F. Supp. 2d 291 (D.D.C. 2005) ................................................................. 11

*Larson v. Dep't of State*,
   565 F.3d 857 (D.C. Cir. 2009) .......................................................................... 4

*Lepelletier v. Fed. Deposit Ins. Corp.*,
   164 F.3d 37 (D.C. Cir. 1999) .......................................................................... 10

*Levinthal v. Fed. Election Comm'n*,
   219 F. Supp. 3d 1 (D.D.C. 2016) ............................................................... 13, 14

*Long v. Immigration & Customs Enf't*,
   149 F. Supp. 3d 39 (D.D.C. 2015) ................................................................... 14

*Mapother v. DOJ*,
   3 F.3d 1533 (D.C. Cir. 1993) ............................................................................ 8

*McGehee v. C.I.A.*,
   697 F.2d 1095 (D.C. Cir. 1983) ........................................................................ 4

*Mead Data Cent., Inc. v. U.S. Dep't of Air Force*,
   566 F.2d 242 (D.C. Cir. 1977) .................................................................... 7, 14

*Media Research Ctr. v. U.S. Dep't of Justice*,
   818 F. Supp. 2d 131 (D.D.C. 2011) ................................................................... 4

*Military Audit Project v. Casey*,
  656 F.2d 724 (D.C. Cir. 1981) ............................................................................ 4, 8

*Montrose Chem. Corp. of Cal. v. Train*,
  491 F.2d 63 (D.C. Cir. 1974) .................................................................................. 9

*Muhammad v. U.S. Customs & Border Prot.*,
  559 F. Supp. 2d 5 (D.D.C. 2008) ........................................................................... 5

*Natural Res. Defense Council, Inc. v. Nuclear Regulatory Comm'n*,
  216 F.3d 1180 (D.C. Cir. 2000) .............................................................................. 7

*Nat'l Ass'n of Home Bldgs v. Norton*,
  309 F.3d 26 (D.C. Cir. 2002) ................................................................................ 11

*Nat'l Ass'n of Retired Fed. Employees v. Horner*,
  879 F.2d 873 (D.C. Cir. 1989) .............................................................................. 10

*Nat'l Treasury Employees Union v. U.S. Customs Serv.*,
  802 F.2d 525 (D.C. Cir. 1986) ................................................................................ 7

*NLRB v. Sears, Roebuck & Co.*,
  421 U.S. 132 (1975) ............................................................................................ 8, 9

*Oglesby v. U.S. Dep't of the Army*,
  920 F.2d 57 (D.C. Cir. 1990) .................................................................................. 5

*People for the Am. Way Found. v. Nat'l Park Serv.*,
  503 F.Supp.2d 284 (D.D.C. 2007) .................................................................. 11, 12

*Perry v. Block*,
  684 F.2d 121 (D.C. Cir. 1982) ................................................................................ 5

*Petroleum Info. Corp. v. Dep't of the Interior*,
  976 F.2d 1429 (D.C. Cir. 1992) .............................................................................. 9

*Quarles v. Dep't of Navy*,
  893 F.2d 390 (D.C. Cir. 1990) ................................................................................ 9

*Rockwell Int'l. Corp. v. DOJ*,
  235 F.3d 598 (D.C. Cir. 2001) ................................................................................ 8

*Rural Hous. Alliance v. USDA*,
  498 F.2d 73 (D.C. Cir. 1974) ................................................................................ 13

*SafeCard Servs., Inc. v. S.E.C.*,
  926 F.2d 1197 (D.C. Cir. 1991) .......................................................................... 4, 5

*Spirko v. U.S. Postal Serv.*,
  147 F.3d 992 (D.C. Cir. 1998) ........................................................................... 8

*Steinberg v. U.S. Dep't of Justice*,
  23 F.3d 548 (D.C. Cir. 1994) ............................................................................. 5

*Sussman v. U.S. Marshals Serv.*,
  494 F.3d 1106 (D.C. Cir. 2007) ....................................................................... 14

*Tao v. Freeh*,
  27 F.3d 635 (D.C. Cir. 1994) ............................................................................. 3

*Techserve Alliance v. Napolitano*,
  803 F. Supp. 2d 16 (D.D.C. 2011) ................................................................... 13

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*,
  489 U.S. 749 (1989) ......................................................................................... 11

*U.S. Dep't of Justice v. Tax Analysts*,
  492 U.S. 136 (1989) ........................................................................................... 7

*U.S. Dep't of State v. Wash. Post Co.*,
  456 U.S. 595 (1982) ......................................................................................... 10

*Vaughn v. Rosen*,
  484 F.2d 820 (D.C. Cir. 1973) ........................................................................... 7

*Voinche v. FBI*,
  940 F. Supp. 323 (D.D.C. 1996) ...................................................................... 11

*Washington v. U.S. Dep't of Labor*,
  478 F. Supp. 2d 77 (D.D.C. 2007) ................................................................. 4, 8

*Weisberg v. Dep't of Justice*,
  705 F.2d 1344 (D.C. Cir. 1983) ......................................................................... 5

*Weisberg v. U.S. Dep't of Justice*,
  745 F.2d 1476 (D.C. Cir. 1984) ......................................................................... 5

## Statutes

5 U.S.C. § 522(b)(7) ................................................................................... 8, 12, 13

5 U.S.C. § 552(a)(4)(B) ........................................................................................ 7

5 U.S.C. § 552(b)(5) ......................................................................................... 6, 8

5 U.S.C. § 552(b)(6) ....................................................................................... 5, 10

## INTRODUCTION

Plaintiff Jason Prechtel suspects that fraudulent comments were somehow submitted to the Federal Communications Commission ("FCC") during a recent proceeding about the concept known as "Net Neutrality." He has submitted a request under the Freedom of Information Act ("FOIA") to obtain detailed contact and technical information about those who submitted comments, information from the FCC's server logs, and correspondence between the public and an email account the FCC maintains to provide help with its electronic comment-submission tool. The FCC has searched for all of the records requested by Mr. Precthel. It does not possess some of that information, and much of the information that it does possess is exempt from disclosure either because it would unjustifiably invade the privacy of third parties or because it could be used to circumvent the FCC's computer security measures. The FCC was able to provide Mr. Prechtel with some correspondence with its technical-help email account, some of which it lightly redacted to exclude predecisional, deliberative conversations about responding to a media inquiry. Mr. Prechtel disputes the adequacy of the FCC's search and its application of exemptions, so the FCC moves for summary judgment.

## BACKGROUND

Mr. Prechtel is a freelance journalist seeking information about public comments submitted during FCC Proceeding No. 17-108, *Restoring Internet Freedom*, which concerned the issue sometimes referred to as "Net Neutrality." Compl. ¶¶ 2, 6. Mr. Prechtel alleges that he wants to investigate his belief that some of the comments submitted through the FCC's Electronic Comment Filing System ("ECFS") may have been "fake or fraudulent" or the result of a cyberattack. *Id.* ¶ 7. In particular, he is interested in the use of two electronic tools by which the public may submit comments through ECFS. *Id.* One of those tools is the ECFS Application Programming Interface

("API"), which, among other things, allows third parties to create a comment-submission tool on a third-party website thereby permitting users to submit comments without interacting with the ECFS interface. Compl. ¶ 7; SUMF ¶ 6 n.2. The other tool is comma-separated value (".CSV") files. Compl. ¶ 7. These files are FCC-provided templates that allow users to upload several comments simultaneously. SUMF ¶ 8 n.3. For each properly formatted .CSV file submitted, each individual line item is added to the record as an individual "Express Comment." *Id.*

On June 4, 2017, through the FCC's FOIA portal, FOIAonline, Mr. Prechtel submitted a FOIA request seeking:

> 1. All public API keys, including associated registration names and e-mail addresses, that were used to submit online comments via ECFS to Proceeding 17-108, "Restoring Internet Freedom" between Apr 26, 2017 and today, and copies of all data files submitted through these API keys for the same.

> 2. Logs of all times and dates that said public API keys were used to submit online comments via ECFS to Proceeding 17-108, "Restoring Internet Freedom" between Apr 26, 2017 and today.

> 3. E-mail addresses associated with all .CSV comment uploads, along with all .CSV files uploaded in response to Proceeding 17-108, "Restoring Internet Freedom" between Apr 26, 2017 and today (including any accepted .CSV submissions that did NOT use the FCC's "Restoring Internet Freedom ECFS Bulk Upload Template" .CSV file template).

> 4. Logs of all times and dates that said e-mail addresses submitted online comments via the FCC's online .CSV submission box to Proceeding 17-108, "Restoring Internet Freedom" between Apr 26, 2017 and today.

> 5. All e-mail inquiries to ECFSHelp@fcc.gov regarding .CSV comment submissions in response to Proceeding 17-108, "Restoring Internet Freedom" between Apr 26, 2017 and today.

SUMF ¶ 1. The FCC responded to Mr. Prechtel's request by letter dated September 27, 2017.

SUMF ¶ 2. The FCC informed Mr. Prechtel that API keys are maintained by the General Services Administration, not the FCC. SUMF ¶ 2. It also conveyed that e-mail addresses associated with

.CSV comment uploads had been withheld under FOIA Exemption 6, as they constituted the personally identifiable information of commenters. SUMF ¶ 2. However, the letter also noted, however, that information other than the e-mail addresses was publicly available on ECFS. SUMF ¶ 2. The FCC released to Mr. Prechtel 15 pages of responsive emails involving ECFSHelp@fcc.gov, which had been redacted to remove personally identifiable information under Exemption 6, as well as internal deliberations of staff regarding how to respond to outside inquires under Exemption 5. SUMF ¶ 2. Finally, the FCC informed Mr. Prechtel that it would withhold the ECFS server logs under Exemption 6, due to the personally identifiable information contained therein, and Exemption 7(E), as the logs would provide adversaries with detailed information about how the FCC takes to protect its IT infrastructure. SUMF ¶ 2.

Mr. Prechtel, through counsel, filed this action on September 7, 2017, ECF No. 1, before receiving the FCC's response, and served it on the FCC on November 15, 2017, SUMF ¶ 4, after receiving its response. The parties conferred and proposed a summary judgment briefing schedule to resolve their disputes about the adequacy of the FCC's search and its application of FOIA exemptions. ECF No. 10. The FCC submits this brief pursuant to that schedule.

## STANDARD

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 248. Once the moving party has met its burden, the

nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Research Ctr. v. U.S. Dep't of Justice*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment.") (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). A government agency may obtain summary judgment in a FOIA case by relying on "relatively detailed" and "nonconclusory" declarations. *See McGehee v. C.I.A.*, 697 F.2d 1095, 1102 (D.C. Cir. 1983). "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Research Ctr.*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)). Courts give agency declarations "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

Once the court determines that an agency has released all non-exempt material, it has no further judicial function to perform under FOIA and the FOIA claim is moot. *See Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982); *Muhammad v. U.S. Customs & Border Prot.*, 559 F. Supp. 2d 5, 7–8 (D.D.C. 2008).

## ARGUMENT

### I.     The FCC Conducted an Adequate Search.

The FCC fulfilled its obligation to search for records responsive to Mr. Prechtel's FOIA request. Under FOIA, an agency must undertake a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). This standard of reasonableness "depends, not surprisingly, on the facts of each case." *Weisberg v. U.S. Dep't of Justice,* 745 F.2d 1476, 1485 (D.C. Cir. 1984). A search is not inadequate merely because it failed to "uncover[] every document extant." *SafeCard Servs.*, 926 F.2d at 1201; *see also Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 n.13 (D.C. Cir. 1990) (rejecting an argument that a search was inadequate because it did not uncover "documents that [plaintiff] claims must exist"); *Judicial Watch v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) (noting that "[p]erfection is not the standard by which the reasonableness of a FOIA search is measured"). Indeed, "[t]he question is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was adequate." *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (emphasis in original). The declaration by which an agency shows this adequacy need not "set forth with meticulous documentation the details of an epic search for the requested records;" it need only "explain in reasonable detail the scope and method of the search conducted by the agency." *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982).

The FCC conducted adequate searches for all records requested in Mr. Prechtel's five-part FOIA request. The first two items of his request sought information associated with API keys. SUMF ¶ 1. As explained in the declaration of Ryan Yates, the FCC conferred with its IT staff and determined that it does not have the requested records. SUMF ¶ 6. That is because a user wishing to interact with the ECFS using API must register for a key through the General Services Administration ("GSA") by providing that agency with  user information, including an email address. SUMF ¶ 6. The FCC itself does not have any information about which API keys are associated with particular email addresses. SUMF ¶ 6. In addition, its servers do not log which API keys are associated with a given comment. SUMF ¶ 6. Consequently, the FCC cannot possibly fulfill Mr. Prechtel's request for API keys associated with the *Restoring Internet Freedom* comments or provide any associated names and email addresses. SUMF ¶ 6.

The third and fourth items of Mr. Prechtel's request seek all .CSV files submitted as part of the *Restoring Internet Freedom* comment period as well as the associated email addresses and logs of other comments submitted by those email addresses. SUMF ¶ 1. The FCC's IT staff located all of this information, but, as explained elsewhere, determined that all of it must be withheld as exempt under Exemptions 6 and 7(E).

Finally, the fifth item of Mr. Prechtel's request asked for email inquiries sent to the account "ECFSHelp@fcc.gov" regarding .CSV comment submissions related to the *Restoring Internet Freedom* proceeding. SUMF ¶ 1. Unsurprisingly, IT staff determined that all records responsive to this request would be located in the inbox for the ECFSHelp@fcc.gov email account. SUMF ¶ 7. IT staff conducted a search of that account using the date and subject parameters of the FOIA request and located 15 pages of responsive records. SUMF ¶ 7.Those records were redacted as explained elsewhere and released to Mr. Prechtel. SUMF ¶ 7.

Thus, FCC located all of the records responsive to Mr. Prechtel's request except for the API information, which knowledgeable subject-matter experts concluded that FCC did not possess because API keys are registered through the GSA and the FCC's servers do not log the requested information. The Court should therefore enter summary judgment in favor of the FCC on the adequacy of the search.

## II.    The FCC Properly Withheld Information Pursuant to FOIA Exemptions.

FOIA requires that an agency release responsive information unless it is protected from disclosure by one or more of the Act's nine exemptions. *See* 5 U.S.C. § 552(b); *see also U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150–51 (1989). The agency bears the burden of demonstrating that any withheld information falls into one or more of those exemptions. 5 U.S.C. § 552(a)(4)(B); *see also Natural Res. Defense Council, Inc. v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000).

An agency may meet its burden to establish the applicability of an exemption by providing a *Vaughn* index that "permit[s] adequate adversary testing of the agency's claimed right to an exemption." *Nat'l Treasury Employees Union v. U.S. Customs Serv.*, 802 F.2d 525, 527 (D.C. Cir. 1986) (citing *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977); *Vaughn v. Rosen*, 484 F.2d 820, 828 (D.C. Cir. 1973)). The index must contain "an adequate description of the records" and "a plain statement of the exemptions relied upon to withhold each record." *Nat'l Treasury Employees*, 802 F.2d at 527 n. 9.

Additionally, although a *Vaughn* index is a common device used by agencies to meet their burden of proof, "the Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not

7

controverted by either contrary evidence in the record nor by evidence of agency bad faith.'"
*Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Labor*, 478 F. Supp. 2d 77, 80
(D.D.C. 2007) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)); *see
also Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 998 n.4 (D.C. Cir. 1998) ("The form of the *Vaughn*
index is unimportant and affidavits providing similar information can suffice.") (citing *Gallant v.
NLRB*, 26 F.3d 168, 172-73 (D.C. Cir. 1994)).

The FCC has withheld information under FOIA Exemptions 5, 6, and 7(E), each of which
is addressed in turn below.

### A.     The FCC Properly Withheld Information under Exemption 5.

The FCC withheld some information pursuant to Exemption 5, which protects "inter-
agency or intra-agency memorandums or letters which would not be available by law to a party
other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption shields
documents of the type that would be privileged in the civil discovery context, including materials
protected by the attorney-client privilege, the attorney work-product doctrine, and the deliberative-
process privilege. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *see Judicial Watch,
Inc. v. Dep't of Justice*, 365 F.3d 1108, 1113 (D.C. Cir. 2004); *Rockwell Int'l. Corp. v. DOJ*, 235
F.3d 598, 601 (D.C. Cir. 2001). The FCC's withholdings invoke the deliberative-process privilege.

The deliberative-process privilege protects intra- or inter-agency documents that are "both
pre-decisional and deliberative." *Mapother v. DOJ*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). The D.C.
Circuit has held:

> A document is predecisional if it was prepared in order to assist an
> agency decisionmaker in arriving at his decision, rather than to
> support a decision already made. Material is deliberative if it reflects
> the give-and-take of the consultative process. Our recent decisions
> on the deliberativeness inquiry have focused on whether disclosure

of the requested material would tend to discourage candid discussion within an agency.

*Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992). "Examples of predecisional documents include 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.'" *Cleveland v. United States*, 128 F. Supp. 3d 284, 298–99 (D.D.C. 2015) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).

The deliberative-process privilege "was intended to protect not simply deliberative *material*, but also the deliberative *process* of agencies." *Montrose Chem. Corp. of Cal. v. Train*, 491 F.2d 63, 71 (D.C. Cir. 1974) (emphasis added). For that reason, even factual material is exempt under Exemption 5 if disclosure "would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Quarles v. Dep't of Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990) (citing *Dudman Comm. Corp. v. Dep't of the Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987)).

"There should be considerable deference to the [agency's] judgment as to what constitutes . . . 'part of the agency give-and-take—of the deliberative process—by which the decision itself is made'" because the agency is best situated "to know what confidentiality is needed 'to prevent injury to the quality of agency decisions . . . .'" *Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) (quoting *Sears*, 421 U.S. at 151).

As explained in the declaration of Ryan Yates and the FCC's *Vaughn* index, the FCC redacted the content of emails reflecting internal agency deliberations about how to respond to an inquiry by CQ Roll Call, an intelligence and news company. SUMF ¶ 12; Exhibit 1, *Vaughn* Index Nos. 1–3. These deliberations occurred prior to any final decision about how to respond to that inquiry and reflected a back and forth among agency staff about how to respond, including

9

discussions of options considered and discarded. SUMF ¶ 12. The Office of General Counsel at

the FCC reviewed the communications and concluded that their disclosure would chill the candid

exchanges of predecisional ideas among staff, which Exemption 5 is intended to protect. SUMF

¶ 12. Accordingly, the communications were properly redacted. *See Judicial Watch, Inc. v. U.S.

Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 207–08 (D.D.C. 2010) (holding that Exemption 5

permitted an agency to withhold emails about how to respond to a media inquiry because they

were covered by the deliberative-process privilege).

### B.    The FCC Properly Withheld Information under Exemption 6.

Exemption 6 serves to protect personal privacy, permitting an agency to withhold

"personnel and medical files and similar files the disclosure of which would clearly constitute an

unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The term "similar files" is to be

interpreted broadly, covering all "Government records on an individual which can be identified as

applying to that individual." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 595, 602 (1982);

*see also Lepelletier v. Fed. Deposit Ins. Corp.*, 164 F.3d 37, 47 (D.C. Cir. 1999) ("The Supreme

Court has interpreted the phrase 'similar files' to include all information that applies to a particular

individual.").

If the threshold requirement of ''personnel and medical files and similar files'' is met, the

Court must weigh the "privacy interest in non-disclosure against the public interest in the release

of the records in order to determine whether, on balance, the disclosure would work a clearly

unwarranted invasion of personal privacy." *Lepelletier*, 164 F.3d at 47. If the requesting party

cannot demonstrate a public interest in disclosure, then the court will not order disclosure, because

"something, even a modest privacy interest, outweighs nothing every time." *Nat'l Ass'n of Retired

Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989). Thus, "unless a FOIA request

advances 'the citizens' right to be informed about what their government is up to,' no relevant public interest is at issue." *Nat'l Ass'n of Home Bldgs v. Norton*, 309 F.3d 26, 34 (D.C. Cir. 2002) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989)). Absent a public interest of the sort FOIA was intended to serve, the Court's inquiry ends, and the exemption must be upheld. *Consumers' Checkbook Ctr. for the Study of Servs. v. HHS*, 554 F.3d 1046, 1056 (D.C. Cir. 2009) ("[W]e need not balance the non-existent public interest against every physician's substantial privacy interest in the Medicare payments he receives.").

Here, Exemption 6 protects from disclosure the requested email addresses and IP addresses of commenters using the .CSV submission tool. The FCC recognizes that courts in this district have sometimes—but not always—held that Exemption 6 does not protect the identity of persons submitting comments or requests for action to the government. *See People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F.Supp.2d 284, 307 (D.D.C. 2007) ("Disclosing the mere identity of individuals who voluntarily submitted comments regarding the Lincoln video does not raise the kind of privacy concerns protected by Exemption 6."); *Alliance for the Wild Rockies v. Dep't of the Interior*, 53 F.Supp.2d 32, 37–38 (D.D.C. 1999) (ordering disclosure of the identity of individuals who voluntarily submitted written comments in the agency's rulemaking process); *but see Kidd v. Dep't of Justice*, 362 F. Supp. 2d 291, 297 (D.D.C. 2005) ("Providing personal identifying information commonly found in constituent letters [to Congresspersons] does not advance the purpose of FOIA and, as such, may be withheld from FOIA requests"); *Voinche v. FBI*, 940 F. Supp. 323, 329–30 (D.D.C. 1996) ("There is no reason to believe that the public will obtain a better understanding of the workings of various agencies by learning the identities of . . . private citizens who wrote to government officials."). But the identities of commenters are not what Mr. Prechtel is requesting. Instead, he seeks those commenters' email addresses and IP

addresses. Even where courts have allowed for the disclosure of commenters' identities, they have held that contact information for those same commenters should not be disclosed, because it does not shed additional light on government activities. *See People for the Am. Way*, 503 F. Supp. 2d at 306 (requiring the disclosure of commenters' identities but holding that Exemption 6 exempted their addresses and telephone numbers).[5] As the FCC informed Mr. Prechtel, the .CSV files themselves are publicly available and may be accessed through ECFS. *See* Exhibit 2, Letter from FCC at 2. Mr. Prechtel may obtain information about commenters from those files, but he may not obtain more private information, including their email addresses and IP addresses, from the FCC's server logs.

In addition, the FCC redacted the name of the FCC personnel who printed out the emails that were released to Mr. Prechtel. That person's name appeared in the header for each email as an automatic function of the printing process. There is no public interest in the identity of the agency employee preforming this administrative function and that person has a privacy interest in performing such tasks without public exposure. SUMF ¶ 10.

### C.    The FCC Properly Withheld Information under Exemption 7(E).

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such records or information" would result in one of six specified harms. 5 U.S.C. § 522(b)(7). The FCC invokes one of those harms: disclosure of law-enforcement techniques and procedures under 7(E).

---

[5] The *People for the American Way* court noted that the agency in that case had also withheld commenters' email addresses, but did not resolve the question because the parties did not address it and because, it observed, the case law on the applicability of Exemption 6 to email addresses was then sparse. 503 F. Supp. 2d at 307. Since *People for the American Way*, courts in this district have made it clear that Exemption 6 applies to email addresses. *See, e.g., Cornucopia Inst. v. U.S. Dep't of Agriculture*, --- F. Supp. 3d ---, 2017 WL 4685541, at *7 (D.D.C. Oct. 17, 2017); *Bayala v. U.S. Dep't of Homeland Sec.*, 264 F. Supp. 3d 165, 178 (D.D.C. 2017) (citing cases).

For any part of Exemption 7 to apply, an agency must demonstrate that the records it withheld were compiled for law-enforcement purposes. *See FBI v. Abramson*, 456 U.S. 615, 622 (1982). "A record is 'compiled for law enforcement purposes' so long as there is (1) a rational 'nexus' between the record and the agency's law enforcement duties, and (2) a connection between the subject of the record and a possible security risk or violation of federal law. *Levinthal v. Fed. Election Comm'n,* 219 F. Supp. 3d 1, 6 (D.D.C. 2016) (citing *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998)). Records compiled for law enforcement purposes may relate to either criminal or civil matters. *Rural Hous. Alliance v. USDA*, 498 F.2d 73, 81 & n.46 (D.C. Cir. 1974).

Under Exemption 7(E), agencies may withhold information "which would disclose techniques and procedures for law enforcement investigation or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). This exemption applies broadly and allows agencies to withhold information that "would provide insight into its investigatory or procedural techniques." *Techserve Alliance v. Napolitano*, 803 F. Supp. 2d 16, 28–29 (D.D.C. 2011); *see also Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (noting that Exemption 7(E) offers "a relatively low bar for the agency to justify withholding" information).

The FCC invoked Exemption 7(E) to withhold server logs from Mr. Prechtel. SUMF ¶ 15. The FCC's IT staff concluded that the release of those server logs would reveal sensitive information about the agency's IT architecture, including security measures that the FCC takes to protect its systems from malicious activity. SUMF ¶ 15. Further, the logs would reveal detailed information about the FCC's relationship with its commercial cloud servers and the infrastructure used to manage ECFS and protect it from malicious cyberattacks. SUMF ¶ 15. In addition, the logs

would reveal steps that the FCC took to manage a spike in internet traffic during the comment period for the *Restoring Internet Freedom* proceeding, thereby providing future would-be attackers with a roadmap to evade the FCC's defensive efforts. SUMF ¶ 15. Thus, the IT staff concluded that the release of the server logs would adversaries to circumvent the FCC's security measures and thereby violate the law. SUMF ¶ 15. Those server logs were therefore properly withheld under Exemption 7(E). *See Long v. Immigration & Customs Enf't*, 149 F. Supp. 3d 39, 51 (D.D.C. 2015) ("[C]ourts in this District have recognized the risk of a cyber-attack or a breach of a law enforcement database as valid grounds for withholding under Exemption 7(E).") (citing cases); *see also Levinthal*, 219 F. Supp. 3d at 7 (opining that "'[j]udges are not cyber specialists, and it would be the height of judicial irresponsibility for a court to blithely disregard . . . a claimed risk' of a cyber-attack or a security breach") (quoting *Long*, 149 F. Supp. 3d at 53).

**III.    The FCC Released Reasonably Segregable Information.**

If a responsive record contains information exempt from disclosure, any "reasonably segregable" nonexempt information must be disclosed. 5 U.S.C. § 552(b). Nonexempt portions of records need not be disclosed, however, if they are "inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). To establish that all reasonably segregable, nonexempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578–79 (D.C. Cir. 1996); *Canning v. Dep't of Justice*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

14

Here, as demonstrated by the declaration of Ryan Yates and the FCC's *Vaughn* index, Ex. 1, the FCC examined and processed all of the found records responsive to Mr. Prechtel's request. Where exempt information was reasonably segregable from nonexempt information, the FCC redacted only the exempt information and produced the rest. SUMF ¶ 16. Therefore, all reasonably segregable information has been released and the FCC is entitled to summary judgment.

## CONCLUSION

The Court should enter summary judgment in favor of the FCC.

Dated: February 16, 2018                    Respectfully submitted,

                                            JESSIE K. LIU, D.C. Bar #472845
                                            United States Attorney

                                            DANIEL F. VAN HORN, D.C. Bar #924092
                                            Chief, Civil Division

                                            By:   /s/ Johnny Walker
                                            JOHNNY H. WALKER, D.C. Bar #991325
                                            Assistant United States Attorney
                                            555 4th Street, N.W.
                                            Washington, District of Columbia 20530
                                            Telephone: 202 252 2575
                                            johnny.walker@usdoj.gov

                                            *Counsel for Defendant*